UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAM GURUNG,<br><br>Petitioner,<br><br>v.<br><br>CHRISTOPHER LAROSE, Warden at<br>Otay Mesa Detention Center,<br><br>Respondent. | Case No.:  26v920-LL-MSB<br><br>**ORDER GRANTING AMENDED PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**<br><br>[ECF No. 5] |

Before the Court is Petitioner Ram Gurung's Amended Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241. ECF No. 5 ("Pet."). Respondent filed a Return in opposition to the Petition [ECF No. 8 ("Ret.")], and Petitioner filed a Traverse [ECF No. 9 ("Traverse")]. For the reasons set forth below, the Court **GRANTS** the Petition.

**I.       BACKGROUND**

Petitioner is a native of Nepal who fled Nepal after Maoist Party threatened to kill him for refusing the join the party. Declaration of Ram Gurung ("Gurung Decl.") ¶¶ 1–2, ECF No. 5-1. On June 14, 2025, he was taken into immigration custody and has been detained at Otay Mesa Detention Center ("OMDC") since then. *Id*. ¶ 1; ECF No. 1 at 1. After he was detained, Petitioner had an interview related to the Convention Against Torture ("CAT") and a credible fear interview a few months after the CAT interview,

during which an asylum officer made a positive credible fear finding. Gurung Decl. ¶ 3; Ret. at 1. On September 18, 2025, the agency served a Notice to Appear and placed him in removal proceedings. Ret. at 1. Petitioner has had three court appearances in his immigration case so far. *Id*. Petitioner has applied for asylum before an immigration judge ("IJ") but has not had a merits hearing yet. Gurung Decl. ¶ 4. Petitioner's final merits hearing is scheduled on April 16, 2026. Ret. at 2. Petitioner alleges that if he is denied asylum by the IJ, he will file an appeal with the Board of Immigration Appeals ("BIA") and the Ninth Circuit. Gurung Decl. ¶ 6; Pet. at 2. Petitioner also alleges that his mental health has deteriorated during his time in custody at the Otay Mesa Detention Center and is taking medicine for his depression, which is not helping. Gurung Decl. ¶ 7. Lastly, Petitioner alleges that he has never committed any crime. *Id*. ¶ 8.

Petitioner has been detained since June 14, 2025. Gurung Decl. ¶ 1. On February 12, 2026, Petitioner filed the instant Petition, alleging that he has been detained for eight months without a bond hearing. ECF No. 1 at 6. The Court appointed counsel and Petitioner submitted an amended petition on February 25, 2026. ECF Nos. 2, 5. He seeks a writ of habeas corpus directing Respondent to immediately release him from custody or in the alternative, a bond hearing before a neutral decisionmaker. Pet. at 17–19.

## II.    LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *Hamdi*, 542 U.S. at 536 (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001)). Accordingly, challenges

26cv920-LL-MSB

to immigration-related detention are within the purview of a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) ("Section 2441 habeas proceedings are available as a forum for statutory and constitutional challenges to post-removal-period detention."); *see also Lopez-Marroquin v. Barr*, 955 F.3d 759 (9th Cir. 2020) ("[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order.").

## III.   DISCUSSION

Petitioner argues that his prolonged detention without a bond hearing violates the Fifth Amendment's Due Process Clause. Pet. at 4–8. Respondent contends there is no due process violation because Petitioner is detained pursuant to § 1225(b)(1), which mandates detention through the conclusion of the removal process. Ret. at 3–6.

The Due Process Clause of the Fifth Amendment provides that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)). "At the same time, however, this Court has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Id.* The Ninth Circuit has questioned the constitutionality of certain immigration detention statutes, including § 1225(b):

> We have grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so. Arbitrary civil detention is not a feature of our American government. "[L]iberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755, 107 S. Ct. 2095, 95 L.Ed.2d 697 (1987). Civil detention violates due process outside of "certain special and narrow nonpunitive circumstances." *Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S. Ct. 2491, 150 L.Ed.2d 653 (2001) (internal quotation marks and citation omitted).

*Rodriguez v. Marin*, 909 F.3d 252, 256–57 (9th Cir. 2018) (alteration in original).

The Court agrees with those courts that have found a noncitizen detained under § 1225(b) for a prolonged period without an individualized bond hearing may assert a constitutional right to due process. *See Sadeqi v. LaRose*, No. 25-CV-2587-RSH-BJW, 2025 WL 3154520, at *2 (S.D. Cal. Nov. 12, 2025) ("This Court agrees with the majority position that a petitioner detained under Section 1225(b)(1) may assert a due process challenge to prolonged mandatory detention without a bond hearing."); *Maksin v. Warden, Golden State Annex*, No. 1:25-CV-00955-SKO (HC), 2025 WL 2879328, at *3 (E.D. Cal. Oct. 9, 2025) ("Several courts including the Third, Sixth, and Ninth Circuit, as well as numerous district courts, have found that unreasonably long detention periods may violate the due process clause." (collecting cases)); *Abdul-Samed v. Warden of Golden State Annex Det. Facility*, No. 1:25-CV-00098-SAB-HC, 2025 WL 2099343, at *6 (E.D. Cal. July 25, 2025) ("[E]ssentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, 'will—at some point—violate the right to due process.'" (quoting *Martinez v. Clark*, No. C18-1669-RAJ-MAT, 2019 WL 5968089, at *6 (W.D. Wash. May 23, 2019), *report and recommendation adopted,* No. 18-CV-01669-RAJ, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019))); *Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 772 (S.D. Cal. 2020) ("[T]he Court joins the majority of courts across the country in concluding that an unreasonably prolonged detention under 8 U.S.C. § 1225(b) without an individualized bond hearing violates due process."); *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1116–17 (W.D. Wash. 2019).

Respondent relies on two cases to support their argument that § 1225(b)(1) and its provision for mandatory detention provides all the process that Petitioner is due. Ret. at 4–5 (citing *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020), and *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953)). However, the Court is not persuaded.

In *Thuraissigiam*, the habeas petitioner argued that the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 violated "his right to due process by precluding judicial review of his allegedly flawed credible-fear proceeding." *Thuraissigiam*, 591 U.S.

at 138. The Supreme Court found that the petitioner, as an applicant for admission, was provided "the right to a determination whether he had a significant possibility of establishing eligibility for asylum" pursuant to § 1225(b), and that he had "only those rights regarding admission that Congress has provided by statute." *Id.* at 140 (internal quotation marks and brackets omitted) (quoting §§ 1225(b)(1)(B)(ii), (v)). The Court finds *Thuraissigiam* addressed a noncitizen's right to challenge *admission*, not detention. *See, e.g.*, *Sadeqi*, 2025 WL 3154520, at *2 ("This Court likewise agrees with those district courts that interpret *Thuraissigiam* as circumscribing an arriving [noncitizen's] due process rights to *admission*, rather than limiting that person's ability to challenge *detention*."); *Aviles-Mena v. Kaiser*, No. 25-CV-06783-RFL, 2025 WL 2578215, at *4 (N.D. Cal. Sept. 5, 2025) (finding *Thuraissigiam* inapplicable to cases challenging detention).

The Court finds that *Mezei* is also distinguishable. *Mezei* involved a noncitizen who had been "permanently excluded from the United States on security grounds but stranded in his temporary haven on Ellis Island because other countries [would] not take him back." *Mezei*, 345 U.S. at 207. The Supreme Court recognized Mezei's exclusion for security reasons as different from noncitizens who may be released from detention on bond. *Id.* at 216 ("An exclusion proceeding grounded on danger to the national security, however, presents different considerations; neither the rationale nor the statutory authority for such release exists."). The facts are significantly different because Petitioner has not been excluded as a security risk, does not have a final order of removal, and received a positive finding pursuant to the CAT. *See Rosales-Garcia v. Holland*, 322 F.3d 386, 413–14 (6th Cir. 2003) ("[T]he *Mezei* Court explicitly grounded its decision in the special circumstances of a national emergency and the determination by the Attorney General that Mezei presented a threat to national security."); *Kydyrali*, 499 F. Supp. 3d at 772 (finding *Mezei* inapposite to issue of whether prolonged detention without a bond hearing violates due process).

Respondent argues that applying the three-factor balancing test articulated in *Lopez v. Garland*, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022) demonstrates that Petitioner's

detention is not unconstitutional at this stage. Ret. at 6. Petitioner contends that applying the balancing test articulated in either *Lopez* or *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1106 (W.D. Wash. 2019), shows that his detention violates his due process rights. Pet. at 7–10; Traverse at 4–5.

Courts in the Ninth Circuit have used various factor tests to determine whether due process requires a bond hearing in immigration detention cases, including the *Banda* and *Lopez* tests. In *Banda*, the court considered the following factors to determine whether prolonged mandatory detention under § 1225(b) in a particular case violates the Due Process Clause: "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal." *Banda*, 385 F. Supp. 3d at 1118 (quoting *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858–59 (D. Minn. 2019)). Similarly, in *Lopez*, the court considered the first, second, fourth, and fifth *Banda* factors for its analysis. *See Lopez*, 631 F. Supp. 3d at 879 ("the Court will look to the total length of detention to date, the likely duration of future detention, and the delays in the removal proceeding caused by the petitioner and the government.") Therefore, this Court will apply the *Banda* factors.

The Court first considers the length of detention. The total length of detention is considered the most important factor. *Banda*, 385 F. Supp. 3d at 1118. To date, Petitioner has been in detention for over eight months. Gurung Decl. ¶ 1. "Courts have found that detention over seven months without a bond hearing weighs toward a finding that it is unreasonable." *Amando v. United States Dep't of Just.*, No. 25CV2687-LL-DDL, 2025 WL 3079052, at *5 (S.D. Cal. Nov. 4, 2025) (collecting cases). Therefore, the Court finds the length of detention weighs in favor of Petitioner.

Next, the Court considers the likely duration of future detention. Petitioner's individual merits hearing is scheduled for April 16, 2026. Ret. at 2. At this hearing, if Petitioner is awarded asylum and the Department of Homeland Security ("DHS") does not

6

26cv920-LL-MSB

appeal, he will be released. However, in any other scenario—such as if DHS appeals or if Petitioner is granted withholding or deferral of removal but not asylum—he is likely to be detained for months. *See, e.g.*, *Guarin v. LaRose*, No. 25-CV-03085-DMS-VET, 2025 WL 3440689, at *1 (S.D. Cal. Dec. 1, 2025) (withholding of removal granted May 22, 2025 and petitioner filed habeas petition for prolonged detention almost six months later); *C.M.S. v. Oddo*, No. 3:25-CV-00216, 2025 WL 3442697, at *1 (W.D. Pa. Dec. 1, 2025) (petitioner detained for more than ten months after a final order of removal with withholding granted and only released upon writ of habeas corpus); *Maksim v. Annex*, No. 1:25-CV-00955-SKO (HC), 2025 WL 2879328, at *4 (E.D. Cal. Oct. 9, 2025) (finding determination of asylum application and subsequent appeal could take a substantial amount of time). If Petitioner is denied asylum, he intends to appeal to the BIA and the Ninth Circuit, which can take years. Gurung Decl. ¶ 6. All told, "[t]his process may take up to two years or longer." *Banda*, 385 F. Supp. 3d at 1119. Therefore, the Court finds this factor weighs in favor of Petitioner.

In considering the conditions of detention, "[t]he more that the conditions under which the [noncitizen] is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Banda*, 385 F. Supp. 3d at 1119 (second alteration in original) (citation omitted). Petitioner is detained at OMDC, and courts have found confinement at OMDC is "indistinguishable from penal confinement" as it is "a private, for-profit detention center operated by CoreCivic, Inc., which also runs many state penitentiaries." *Kydyrali*, 499 F. Supp. 3d at 773. Noncitizen detainees at OMDC are "locked up behind razor wire and concrete walls in a secured facility," and are forced to wear "a color-coded prisoner jump suit," *Abdul Kadir v. Larose*, No. 25CV1045-LL-MMP, 2025 WL 2932654, at *5 (S.D. Cal. Oct. 15, 2025). The Court finds this factor weighs in favor of Petitioner.

The fourth and fifth factors concern delays in the removal proceedings caused by Petitioner or the Respondent. Respondent does not argue that Petitioner delayed the proceedings or that proceedings have been delayed. Ret. at 6. Petitioner also claims that

the delay factor is neutral as there is no indication that he engaged in any unreasonable delay. Pet. at 9. The Court finds no showing that either side has caused undue delays, so these factors are neutral.

In considering the "likelihood that the removal proceedings will result in a final order of removal," the Court considers "whether the noncitizen has asserted any defenses to removal." *Banda*, 385 F. Supp. at 1120 (citations omitted). "[W]here a noncitizen has asserted a good faith challenge to removal, 'the categorical nature of the detention will become increasingly unreasonable.'" *Id.* (citing *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *11 (S.D.N.Y. May 23, 2018)). Here, an asylum officer made a positive credible fear finding. Ret. at 1. The Court finds this delay factor is slightly in favor of Petitioner.

Considering all the factors, the Court finds Petitioner's mandatory detention under § 1225(b) has become unreasonable and that due process requires that he be provided with a bond hearing. *See Rodriguez v. Robbins*, 715 F.3d 1127, 1144 (9th Cir. 2013) ("[W]e note that the discretionary parole system available to § 1225(b) detainees is not sufficient to overcome the constitutional concerns raised by prolonged mandatory detention."). At the bond hearing before a neutral immigration judge, Respondent "must justify his continued detention by a showing of clear and convincing evidence that Petitioner would likely flee or pose a danger to the community if released." *Gao v. LaRose*, 805 F. Supp. 3d 1106, 1112 (S.D. Cal. 2025) (citations omitted); *Martinez v. Clark*, 124 F.4th 775, 786 (9th Cir. 2024) (noting that due process requires "the government to prove dangerousness or risk of flight by clear and convincing evidence" at a bond hearing for noncitizens subject to prolonged detention (citing *Singh v. Holder*, 638 F.3d 1196, 1200, 1205 (9th Cir. 2011)).

With all factors weighing in favor of Petitioner, the Court finds due process requires that he be provided with a bond hearing. Accordingly, the Court **GRANTS** the Petition.

## IV.    CONCLUSION

For the reasons above, the Court **GRANTS** Petitioner's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. Within **<u>seven days</u>** of this Order, Respondent is directed

26cv920-LL-MSB

to arrange an individualized bond hearing before a neutral immigration judge in which the government bears the burden of establishing by clear and convincing evidence that Petitioner is a danger to the community or a flight risk if released.

**IT IS SO ORDERED**.

Dated:  March 19, 2026

_____

Honorable Linda Lopez
United States District Judge

26cv920-LL-MSB